

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LOWER COOK COUNTY MOBIL DEALERS' ASSOCIATION**, et al., ) ) ) | |
| Plaintiffs, ) ) | Case No. 06 C 3652 |
| v. ) ) | Judge Blanche M. Manning |
| **EXXON MOBIL CORPORATION**, a New Jersey corporation, ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendant. ) ) | |

## MEMORANDUM OPINION AND ORDER

This present issue is before this Court on the motion of Plaintiff Lower Cook County Mobil Dealers' Association, et al. ("Plaintiffs"), for a temporary restraining order, a preliminary injunction, and expedited discovery. Essentially, Plaintiffs seek to prevent Defendant Exxon Mobil Corporation ("Exxon Mobil") from closing on the sale of certain properties. In connection with this motion, and in preparation for a hearing on the merits of the preliminary injunction, Exxon Mobil raises several arguments that it believes precludes the Court from granting the preliminary injunction. Specifically, Exxon Mobil argues that preliminary injunctive relief is precluded by ongoing negotiations and letters of intent between Plaintiffs and the purchaser of the properties at issue in the case, and by Plaintiffs' filing lis pendens notices. In order to dispose of these issues prior to taking evidence on the motion for preliminary injunction, the Court requested that the parties brief these two issues. For the reasons that follow, the Court rejects both of Exxon Mobil's arguments and finds that Plaintiffs are not precluded from pursuing a preliminary injunction.

## I. Background

In this case, Plaintiffs argue that Exxon Mobil refused to consider their bids to purchase the land on which sit the gas stations they operate (the "Locations"), and that Exxon Mobil's motivation for the refusal was race, in violation of 42 U.S.C. §§ 1981, 1982. (Pl.'s Mem. at 4-5.) Plaintiffs have each been in the business of operating gas stations for a significant number of years, and they currently lease the Locations from Exxon Mobil.[1] When Plaintiffs learned that Exxon Mobil planned to sell the Locations, Plaintiffs expressed an interest to Exxon Mobil in purchasing the Locations. (Pl.'s Mem. at 3.) Although they presented bids that were competitive in price and terms, Plaintiffs argue, Exxon Mobil did not allow Plaintiffs to participate in the bidding process. (Pl.'s Mem. at 3-5.) Plaintiffs then filed this lawsuit arguing that Exxon Mobil's bidding process was open to bids from African American bidders only, and that Plaintiffs were denied the opportunity to bid because they are not African American. (*See* Pl.'s Mem. at 5-7.)

Exxon Mobil eventually entered into a contract with Esquire Petroleum, LLC ("Esquire"),[2] for the sale of the Locations. (Pl.'s Mem. at 6.) After learning of this contractual agreement, Plaintiffs began negotiating with Esquire for the purchase of the Locations. (Def.'s

---

[1] Plaintiffs allege that Exxon Mobil singled out properties to sell, and Plaintiffs are the individuals who operate gas stations on these properties. As the situation developed, Plaintiffs formed an association to attempt to purchase the stations and (eventually) to bring this lawsuit. (Pl.'s Mem. at 4.) This association is a named party in this lawsuit.

[2] Plaintiffs' brief states that a contract for sale was awarded to Sierra Petroleum Co., Inc. ("Sierra"), and that an Exxon Mobil letter states that Esquire was awarded the contract. Esquire is a newly-formed gasoline distributorship that shares some of the same principals as Sierra. Plaintiffs state that as part of this contract for sale, Sierra was to purchase gasoline from Esquire. At least some of the principals that Sierra and Esquire share are African American. (Pl.'s Mem. at 6.) For the purposes of this Opinion, the Court need not differentiate between Sierra and Esquire, and all references to either will simply be "Esquire."

Resp. at 2-3.) As a result of these negotiations, Esquire has extended offers to sell the Locations to the Plaintiffs upon the closing of the sale from Exxon Mobil to Esquire. (*Id.*) Plaintiffs have also individually signed letters of intent to purchase the Locations from Esquire after the closing. (Def.'s Resp. at 3.) In addition to these negotiations portending a possible sale of the Locations, Plaintiffs filed lis pendens notices on or around July 19-20, 2006. (Def.'s Resp. at 5.)

Concurrently with the negotiations and the filing of lis pendens notices, on September 27, 2006, Plaintiffs submitted the present motion for a temporary restraining order, a preliminary injunction, and other relief. This motion essentially asks the Court to enjoin the closing of the sale between Exxon Mobil and Esquire. (*See generally* Pl.'s Mem.) This closing had been scheduled to take place on December 13, 2006.[3] (Oral Arg., Nov. 30, 2006.)

## II. Discussion

In order to succeed in a motion for a preliminary injunction, Plaintiffs must demonstrate four things: (1) Plaintiffs are likely to succeed on the merits; (2) no adequate remedy exists at law; (3) Plaintiffs will suffer irreparable harm if the motion is not granted; and (4) the "injunction would not harm the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citing *Joelner v. Village of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004)). *See also Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996) (apparently framing the fourth element as weighing the irreparable harm against the harm to the non-movant and non-parties if the injunction is granted). Exxon Mobil's arguments focus on elements (2) and (3).

---

[3] The parties have recently postponed the closing date to early 2007. The exact date is not yet scheduled or is otherwise unknown to the Court.

Exxon Mobil argues that the negotiations between Esquire and Plaintiffs that resulted in offers and letters of intent indicate that Plaintiffs will not suffer irreparable harm if the closing proceeds as planned. (Def.'s Resp. at 2-4.) Exxon Mobil also argues that the lis pendens notices that Plaintiffs filed ensure that Plaintiffs have an adequate remedy at law in the event the closing proceeds. (Def.'s Resp. at 5-6.) The parties have fully briefed these two issues as they relate to the viability of Plaintiffs' preliminary injunction motion.

### A. Negotiations and Letters of Intent

The negotiations and letters of intent relate to whether Plaintiffs can show that, if a preliminary injunction is not granted, they will suffer irreparable harm. A party cannot show that it will suffer irreparable harm where damages are monetary or are easily calculable. *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 463 (7th Cir. 2001) ("[The movant's] losses are purely financial, easily measured, and readily compensated. There is therefore no showing of irreparable harm, and on this ground alone the preliminary injunction should have been denied." (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984))). Coupled with a consideration of whether money will compensate the party seeking a preliminary injunction is an inquiry into whether the subject matter involved in the injunction is unique. If the subject matter is unique, then no amount of money damages will compensate for its loss. With this in mind, because real property is always considered unique, injury that consists of the loss of real property or of the opportunity to purchase real property will always constitute irreparable harm sufficient to support a preliminary injunction. *See United Church of the Med. Ctr. v. Medical Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) ("It is settled

beyond the need for citation, however, that a given piece of property is considered to be unique, and its loss is always an irreparable injury. Substitution of another piece of property cannot cure the loss of one's property by an unconstitutional procedure.").

Exxon Mobil argues that Plaintiffs will suffer no irreparable harm if the closing takes place. Exxon Mobil points out that, because Plaintiffs and Esquire are contemplating and negotiating sales of the Locations, each Plaintiff has an opportunity to buy his or her location, and this opportunity will outlast (and indeed is dependant on) the closing. Exxon Mobil argues that the issue then is not whether the Plaintiffs will be able to purchase the Locations, but whether the Plaintiffs will be able to purchase the Locations from Esquire at a price comparable to the price at which Exxon Mobil would have sold the Locations to Plaintiffs. This, Exxon Mobil argues, renders any harm Plaintiffs might suffer calculable in terms of a dollar amount of damages, i.e., the difference in purchase price attributable to Plaintiffs' having to purchase the Locations from Esquire rather than Exxon Mobil. Exxon Mobil argues that this means that Plaintiffs stand to suffer no irreparable harm, and that a preliminary injunction is therefore unwarranted. (Def.'s Resp. at 2-4.)

The Court disagrees with Exxon Mobil. While the offer letters and other negotiations between Plaintiffs and Esquire demonstrate that Plaintiffs have a possibility of purchasing the Locations from Esquire, these letters and negotiations are not contracts and are not binding on either party. Esquire would be within its rights to refuse to continue negotiating immediately after the closing. Furthermore, the Court notes that there is nothing prohibiting Esquire and Plaintiffs from engaging in negotiations at any time, even absent the letters and surrounding prior

negotiations. With this in mind, in and of themselves, the negotiations and letters of intent do not demonstrate anything relevant.

On top of this, the subject matter of this dispute is the sale of land. As stated above, real property is inherently unique, and the loss of real property rights constitutes irreparable harm. Here, as discussed below, Plaintiffs currently do not have a property right in the Locations. Nevertheless, the presence of the negotiations and the letters of intent do not preclude a preliminary injunction. In light of the fact that anyone can pursue negotiations to buy land at any time, if these negotiations were to negate Plaintiffs' ability to seek a preliminary injunction, this would gut the doctrine of land being unique. In other words, if the possibility of a future purchase of the land in question—no matter how certain or speculative that purchase might be—could render any harm in connection with that land reparable, the Court struggles to find a scenario in which an irreparable harm in situations involving land could ever be found. Exxon Mobil's argument simply proves too much.

In addition, Exxon Mobil mischaracterizes the harm that Plaintiffs may face. Exxon Mobil casts the harm in terms of a difference in the value of the property. Exxon Mobil's reasoning is not without initial appeal. However, in this situation, Plaintiffs are seeking to enjoin what they allege is an illegal sale. They are trying to stop an illegal act. Even if Plaintiffs could be compensated for any difference in purchase price that might result from Plaintiffs' subsequent purchase from Esquire, Plaintiffs still would have suffered discrimination in the sale of the Locations by Exxon Mobil to Esquire. Plaintiffs have a colorable claim that the bidding process leading up to the Exxon Mobil-Esquire sale violates the law, a point that is underscored by the fact that Judge Manning recently denied Exxon Mobil's motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6). (Dkt. No. 64.) This demonstrates the real possibility that the sale is discriminatory,[4] and with this in mind an aspect of Plaintiffs' irreparable harm is the inability to buy from Exxon Mobil on an equal footing in accordance with the law. Bearing this in mind, the Court finds that the negotiations and letters of intent are not sufficient to demonstrate that the harm Plaintiffs face is not irreparable.

### B. Lis Pendens

The lis pendens notices speak to whether Plaintiffs have an adequate legal remedy, which would preclude a preliminary injunction. "Lis pendens" literally means "pending lawsuit." Black's Law Dictionary 950 (8th ed. 2004). This doctrine places subsequent purchasers of property on notice that the purchased property is the subject of litigation and that the purchaser takes subject to the outcome of the litigation. *Bighorn Capital Inc. v. 1000 SMA, LLC.*, No. 05 C 5364, 2005 U.S. Dist. Lexis 27862, at *6 (N.D. Ill. Nov. 9, 2005). Under the Illinois lis pendens statute, the proper filing of a lis pendens notice serves to provide constructive notice to a purchaser of land that the land is the subject of pending litigation. With this constructive notice, the purchaser takes subject to the outcome of the litigation as if the purchaser was a party to the litigation. *See Admiral Builders Corp. v. Robert Hall Vill.*, 101 Ill. App. 3d 132, 135-36, 427 N.E.2d 1032, 1035-36, 56 Ill. Dec. 627, 630-31 (Ill. App. Ct. 1981); *see also* 735 Ill. Comp. Stat. 5/2-1901. For the purposes of the present issue, the Court assumes that the lis pendens notices for the Locations were properly recorded pursuant to the Illinois lis pendens statute.

---

[4]The Court notes that it does not decide at this point whether the sale was discriminatory.

According to Exxon Mobil, the lis pendens notices provide adequate protection against any harm Plaintiffs might face if the closing takes place as planned, thus precluding the need for a preliminary injunction. Exxon Mobil reasons that Esquire will have knowledge that it takes the Locations subject to the outcome of this litigation. In support of this argument, Exxon Mobil cites *Oxequip Health Industries, Inc. v. Canalmar, Inc.*, 94 Ill. App. 3d 955, 419 N.E.2d 625, 50 Ill. Dec. 517 (Ill. App. Ct. 1981). In *Oxequip*, the plaintiff had sought to exercise its option to purchase the premises it leased from the defendant. *Id.* at 956-57, 419 N.E.2d at 626, 50 Ill. Dec. at 518. The defendant refused to close on the sale, and the plaintiff moved for specific performance, i.e., the transfer of title. *Id.* at 957, 419 N.E.2d at 626, 50 Ill. Dec. at 518. To protect its interests in the land at issue, the defendant sought a preliminary injunction enjoining the defendant (and the trustee who held legal title to the premises) from conveying the property to a third party, and the trial court granted the preliminary injunction. *Id.* at 957, 419 N.E.2d at 626, 50 Ill. Dec. at 518. The appellate court reversed the trial court, reasoning that the plaintiff's interest was fully protected by the Illinois lis pendens statute. *Id.* at 958, 419 N.E.2d at 627, 50 Ill. Dec. at 519. The plaintiff would be protected because, if the title transferred to a third party and the plaintiff ultimately succeeded in the case, the third party would have taken the property with constructive notice (due to the lis pendens notice), which would require the third party to transfer the title to the plaintiff at the conclusion of the litigation.

Plaintiffs argued at oral argument that *Oxequip* is an anomaly and that the *Oxequip* court was mistaken in its application of the lis pendens doctrine. (Oral Arg., Nov. 30, 2006.) On this point, the Court notes that *Oxequip* appears to treat lis pendens as a remedy in itself, *Oxequip*, 94 Ill. App. 3d at 958, 419 N.E.2d at 627, 50 Ill. Dec. at 519 ("The statutory remedy for the

contingencies which plaintiff is concerned about is lis pendens."), while the majority of courts have not treated lis pendens as such. *See, e.g., Bighorn Capital*, 2005 U.S. Dist. Lexis 27862, at \*7 ("A *lis pendens* is not an injunction as it does not formally restrain sale, conveyance or purchase." (citation omitted)). In any event, the Court need not determine whether *Oxequip* correctly classified the lis pendens doctrine because *Oxequip* can easily be distinguished on its facts. In distinguishing *Oxequip*, the Court highlights why lis pendens will not adequately protect Plaintiffs.

In *Oxequip*, the claim to the property at issue was the plaintiffs' option–a right to purchase the property. This right to purchase belonged to the plaintiff and was an interest in the property. Thus, were the plaintiff in *Oxequip* to succeed in its litigation, lis pendens would protect the plaintiff because the plaintiff would simply exercise its interest in the land–it would exercise its option to purchase the land (from the third party instead of the defendant).

Here, however, the right of which lis pendens gives notice–the right ultimately at issue in this litigation–is Plaintiffs' right to participate in the bidding process free from racial prejudice in violation of § 1981 and § 1982. This right is not an interest in the Locations because, if Plaintiffs succeed in this case, if they are able to participate in the bidding process, they may well actually lose the bid. Any apparent property interest Plaintiffs currently have in the Locations is illusory because the opportunity to bid secures them no property interest. Because Plaintiffs are not seeking in this litigation a property interest in the Locations, the lis pendens notice will not protect them. If the closing takes place as planned and Plaintiffs ultimately win this case, the operation of the lis pendens doctrine will not secure for Plaintiffs the right to bid on the sale of the Locations from Exxon Mobil free from discrimination because Esquire will at that point own

the Locations. The lis pendens notice will not secure for Plaintiffs any right to bid on the sale of the Locations from Exxon Mobil or from Esquire. Thus, the fact that Plaintiffs filed lis pendens notices will not provide Plaintiffs with an adequate remedy at law, and the lis pendens notices do not foreclose the possibility of the Court's granting the preliminary injunction enjoining the closing.

### III. Conclusion

For the foregoing reasons, the Court rejects Exxon Mobil's arguments as to why the preliminary injunction should not be granted. The letters of intent and the lis pendens notices do not foreclose the Court's granting a preliminary injunction on the issue of the closing. Thus, the need for a preliminary injunction hearing on this matter persists.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: December 8, 2006.

Copies have been mailed to:

| | |
|---|---|
| JOHN J. CONWAY, Esq.<br>Sullivan Hincks & Conway<br>120 West 22nd Street<br>Suite 100<br>Oak Brook, IL 60523 | BARRY E. FIELDS, Esq.<br>JANE S. PARK, Esq.<br>DAVID E. GRASSMICK, Esq.<br>Kirkland & Ellis, L.L.P.<br>200 East Randolph Drive<br>Chicago, IL 60601 |
| Attorney for Plaintiffs | Attorneys for Defendant |